FILED
JUN 30 2008
RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

RECEIVED
JUN 30 2008
RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTEL CORP, ) | |
|     Plaintiff, ) | |
| ) | CASE NO. C 08-02334 SI |
| vs ) | |
| ) | |
| INTELCOM, INC. ) | |
| 1335 Dublin Road, ) | |
| Suite 210-A ) | |
| Columbus, OH 43215 ) | |
| ) | |
|     Defendant, ) | |

**REF: COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Now comes Defendant, INTELCOM, INC., by and through its president, and responds to Plaintiff's complaint as follows:

## Background

### A. INTELCOM INCORPORATED ("INTELCOM")

INTELCOM INCORPORATED ("INTELCOM") was incorporated in 1998 to provide resold long distance and local telecommunications services to businesses and residents (EXHIBITS A & B) at a discount rate ( EXHIBITS C & D) for those who cannot afford the rates charged by companies such as AT&T, MCI, Sprint, Qwest, etc...

The name INTELCOM, INC. was provided to federal and state government agencies in order for them to go through their respective databases of existing list of names and confirm weather or not the name INTELCOM, INC. can be used to transact business in their respective jurisdictions at a federal and state level.

INTELCOM, INC. does not have a physical office in the State of California as it is not required by California incorporation laws.

It was after INTELCOM Officials received the go ahead from the federal and states government agencies that they started using and registering the name INTELCOM, INC. at the Federal and State agencies in order to transact business.

INTELCOM, INC. is a small business and provides discount long distance and local telecommunications service company, and does not manufacture any chips of any kind nor any hardware of any kind (EXHIBITS A, B, C, D).

### B. INTEL CORPORATION ("INTEL")

At its founding, Gordon Moore and Robert Noyce wanted to name their new company "Moore Noyce". The name, however, sounded remarkably similar to "more noise" – an ill-suited name for electronics company, since noise is typically associated with bad interference. They then used the name NM Electronics for almost a year, before deciding to call their company **INTegrated Electronics** or "Intel" for short.

INTEL CORPORATION is a semiconductors company and manufactures microprocessors, flash memory, motherboard chipsets, Network Interface Card and bluetooth chipsets for computer hardware and other electronics.

### C. PRELIMINARY DISCUSSIONS AND STATEMENTS

The law firm HOWREY LLP contacted INTELCOM office to discuss the use of the name INTELCOM, INC., claiming that the name INTELCOM, INC. was improperly use and must be changed.

After several exchanges by mail, e-mail, and on the phone, INTELCOM, INC. offered to settle the dispute amically and reasonnably (EXHIBITS E1, E2).

Unfortunately, the law firm HOWREY LLP rejected INTELCOM $1,000,000.00 (One million dollars) settlement offer (EXHIBITS F1, F2, F3, F4, F5) to change the name INTELCOM, INC. to a new name that will require INTELCOM, INC. to deliver up for destruction all articles, packages, wrappers, products, displays, labels, signs, vehicles displays or signs, circulars, kits, packaging, letterhead, business cards, promotional items, clothing, literature, sales aids, receptables or other matter in its possession, custody, or under the control of INTELCOM or its agents bearing the trademark INTEL in any manner, or any mark that is confusingly similar to or a colorable imitation of INTEL mark, including without limitation the INTELCOM trade name and trademark, both alone and in combination with other words or terms, to cancel or remove the name INTELCOM, INC. from all records of the federal and states agencies in which INTELCOM, INC. is licensed to do business, to cancel the domain name www.intelcomusa.com, to change the name in any existing business contracts that INTELCOM, INC. has established since its existance in 1998.

2

To restate the demand of INTEL, INTELCOM must undo everything that has been done since the creation of the company in 1998 and redo everything all over again for just $4,000.00. As a result, a fair and reasonnable settlement could not be reached between the two parties.

### D. LAWS AND ANALYSIS

Plaintiff, INTEL CORPORATION ("INTEL") alleges that INTELCOM INCORPORATED ("INTELCOM") use of the name INTELCOM violates INTEL trade name and trademark also known as trademark infringement (15 U.S.C. §§ 1114, 1125).

By definition, infringement may occur when one party, the "infringer", uses a trademark which is **identical** or **confusingly similar** to a trademark owned by another party, in relation to **products or services** which are **identical or similar** to the products or services which the registration covers. In addition, the style of a trade mark, such as a **logo** or **font**, can become relevant.

If a party owns the rights to a particular trademark, that party can sue subsequent parties for trademark infringement. 15 U.S.C. §§ 1114, 1125. The standard is "**likelihood of confusion.**" To be more specific, the use of a trademark in connection with the sale of a good constitutes infringement if it is likely to cause consumer confusion as to the source of those goods or as to the sponsorship or approval of such goods. In deciding whether consumers are likely to be confused, the courts will typically look to a number of factors, including: **(1) the strength of the mark; (2) the proximity of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the similarity of marketing channels used; (6) the degree of caution exercised by the typical purchaser; (7) the defendant's intent**. Polaroid Corp. v. Polarad Elect. Corp., 287 F.2d 492 (2d Cir.), cert. denied, 368 U.S. 820 (1961).

When the goods produced by the alleged infringer compete for sales with those of the trademark owner, infringement usually will be found if the marks are sufficiently similar that confusion can be expected. When the goods are related, but not competitive, several other factors are added to the calculus. If the goods are totally unrelated, there can be no infringement because confusion is unlikely. AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979).

INTEL manufactures semiconductors, INTELCOM provides local and long distance telecommunications services in mostly to american rural area at a discounted price and rate. The goods sold by both INTEL and INTELCOM are totally unrelated and different. There is NO infringement whatsoever in this case.

3

In determining whether confusion between related goods is likely, the following factors are relevant:

1. strength of the mark;
2. proximity of the goods;
3. similarity of the marks;
4. evidence of actual confusion;
5. marketing channels used;
6. type of goods and the degree of care likely to be exercised by the purchaser;
7. defendant's intent in selecting the mark.

1. Strength of the mark

A strong mark is inherently distinctive, for example, an arbitrary or fanciful mark; it will be afforded the widest ambit of protection from infringing uses. See, e. g., National Lead Co. v. Wolfe, 223 F.2d 195, 199 (CA 9), Cert. denied, 350 U.S. 883, 76 S.Ct. 135, 100 L.Ed. 778 (1955).

INTELCOM mark is distinctive and descriptive because it tells something about the product the company sells which is telecommunication services (EXHIBITS C, D). But "INTEL" in short is not distinctive and descriptive of a semiconductor product.

2. Proximity of the goods

The danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists. Cf. Stork Restaurant, Inc. v. Sahati, 166 F.2d at 356, which is NOT the case since INTELCOM provides long distance and local telephone services and INTEL manufactures semiconductors.

3. Similarity of the marks

The two marks presented here, INTELCOM mark (EXHIBITS C, D) and INTEL mark are easily distinguishable in use either when written or spoken. INTELCOM mark stands for telecommunications services, INTEL mark stands for semiconductors products although not descriptive and distinctive.

In case AMF, Inc. V. Sleekcraf Boats, 599 F.2d 341 (9th Cir. 1979), the District Court states that:" In resolving this dispute, we must be mindful of exactly what the district court determined. Although in some cases similarity of the marks has been equated with likelihood of confusion, the two inquiries are separate."

4. Evidence of actual confusion

Evidence that use of the two marks, INTELCOM mark ( EXHIBITS C, D) and INTEL mark, has already led to confusion is persuasive proof that future confusion is likely (Plough, Inc. v. Kreis Laboratories, 314 F.2d at 639), has not been provided by Plaintiff in its complaint. As a result, Plaintiff allegations of actual or likelihood of confusion is unfounded and speculative.

Plaintiff INTEL admits in its complaint that INTEL sold in 2007 alone $38.3 billion of INTEL products and services and, in the last twelve years, INTEL has sold over $364 billion of products and services under INTEL name and mark.

In light of the number of sales generated by Plaintiff INTEL, the amount of any type of confusion is non-existent.

INTELCOM, INC. is a small business providing long distance and local telecommunications services to lower income individuals and businesses mostly in rural area while INTEL is an extra large business making and selling semiconductors for computers and electronics companies.

5. Marketing channels

Convergent marketing channels increase the likelihood of confusion. McCarthy, Supra, at s 24.6. There is no evidence brought forward in its complaint by Plaintiff in the record that both lines were sold under the same roof.

6. Type of goods and purchaser care

In assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution. See HMH Publishing Co. v. Lambert, 482 F.2d 595, 599 n. 6 (CA 9 1973).

INTEL manufactures semiconductors products, INTELCOM resells long distance and local telecommunications services. The two products are totally different from one another. INTELCOM does not sell hardware at all, INTELCOM sells telecommunications services. Plaintiff has not provided any evidence that there is a likelihood of confusion that has impacted and will continue to impact negatively the products manufactured and sold by INTEL. In the absence of any findings, the likelihood of confusion between the two products is speculative and unfounded.

7. Intent

When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived. Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d 157-58;

To avoid any use of existing name that might violates 15 U.S.C. §§ 1114, 1125, INTELCOM Officials presented the name back in 1998 at the time of incorporation to state and federal government agencies for approval. INTELCOM Officials use the name INTELCOM only after federal and government agencies approved it. There was no evidence that anyone attempted to palm off INTEL for INTELCOM. In some states INTELCOM could not register to transact business because there was another company registered under the name INTELECOM that provided long distance and local telecommunications services, the same product lines.

## CONLUSION

INTELCOM still remains open to a fair and reasonable settlement that does not destroy the company's ability to continue to operate. Unfortunately, INTEL is using its financial strength to intimidate and force out of business INTELCOM as clearly stated in paragraph C (preliminary discussions and statements) above.

Plaintiff, INTEL did not provide in its complaint any evidence, any proof, any facts whatsoever that justify the infringement law suit brought against INTELCOM that violate 15 U.S.C. §§ 1114, 1125. Plaintiff's complaint is solely based on speculative and unfounded allegations.

    WHEREFORE, the Named Defendant, INTELCOM, INC. respectfully asks this honorable Court to dismiss the Plaintiff's law suit in the above case.

Respectfully Submitted,

_____
Kassi E. Tchankpa
PRESIDENT
INTELCOM, INC.
1335 DUBLIN ROAD, SUITE 210-A
COLUMBUS, OHIO 43215


STATE OF OHIO        )
                     )  SS.
COUNTY OF FRANKLIN   )

Now comes Defendant, INTELCOM, INC. through its President, Kassi E. Tchankpa, being first duly cautioned and sworn, and states the following:

1. I am the President of INTELCOM, INC;
2. The answers contained in the above case are true and correct to the best of my knowledge.


FURTHER AFFIANT SAYETH NAUGHT,

_____
Kassi E. Tchankpa

SWORN TO AND SUBSCRIBED IN MY PRESENCE THIS


_____27_____ DAY OF JUNE 2008


_____      9·12·2012
NOTARY PUBLIC

## CERTIFICATE OF SERVICE:

I hereby certify that a true copy of the foregoing was served by US express mail, postage prepaid, upon Plaintiff's Counsel, Robert N. Phillips (SBN 120970) HOWREY LLP 525 Market Street, Suite 3600 San Francisco, California 94105, this 28th day of June 2008.

_____
Kassi Tchankpa
President
INTELCOM, INC.
1335 Dublin Road, Suite 210-A
Columbus, Ohio 43215



PAGE 1

The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF RENEWAL OF "INTELCOM, INC.", FILED IN THIS OFFICE ON THE TWENTY-NINTH DAY OF JUNE, A.D. 2007, AT 8 O'CLOCK A.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.

EXHIBIT A

2848514  8100

070768444

Harriet Smith Windsor
Harriet Smith Windsor, Secretary of State
AUTHENTICATION: 5882209

DATE: 07-28-07

EXHIBIT B

ITC-98-224 INTELCOM, INC. effective : 4/29/98
Global Facilities-based/Global Resale Services
Application for authority to operate as facilities-based carrier in
accordance with the provisions of Section 63.18(e)(1) of the rules
and also to provide service in accordance with the provisions of Section
63.18(e)(2) of the rules.

http://www.fcc.gov/Bureaus/International/Public_Notices/1998/pnin8111.txt

8/7/98


# HOWREY LLP

550 South Hope Street
Suite 1100
Los Angeles, CA 90071-2627
www.howrey.com

**Bobby A. Ghajar**
Partner
T 213.892.1840
F 213.892.2300
ghajarb@howrey.com

File No. 13466.0378.008882.151

January 29, 2008

**FOR SETTLEMENT PURPOSES ONLY**

**Via Email: intelcom@ee.net**
**and U.S. Mail**

Mr. Kassi E. Tchankpa, President
Intelcom, Inc.
1335 Dublin Road, Suite 210-A
Columbus, OH 43215

RE:   *Use of Intelcom, Inc.*

Dear Kassi:

    Thank you for your voice message of January 16, 2008. I left you a response message on January 22nd, which I hope that you received. The gist of your voice message was that you are not going to change the Intelcom name "free of charge," but that you are willing to change the name if Intel compensates you. As discussed, it is Intel's policy not to pay others to change a name that Intel views as an infringement and dilution of Intel's rights. My previous letters outline why we believe that Intel has a strong case for trademark infringement and dilution against your use of the Intelcom name. For settlement purposes, Intel is willing to forego its potential remedy against you and Intelcom in exchange for an amicable settlement.

    I very much want to work out a resolution with you, but if Intelcom wants Intel to consider a request for payment, I will need some help from you. I would be willing to discuss with my client any "hard costs" that your company would incur through a name change. These may include official fees paid to the Secretaries of State to effectuate a name change, costs of signage for materials that would not normally be reordered and used in the normal course of business, or other non-recoupable expenses. This would not include, by example, proposed compensation for time or "energy," as both parties have spent time and energy (and in Intel's case, attorneys' fees) on this matter, and more important, Intel has spent decades building up its goodwill in the famous INTEL® trademark.

    As a next step, I ask that you call me to discuss what hard costs you envision incurring as part of the name change. In compromise, I would ask Intel to give you a transition period within which you could use up your current supply of letterhead or business cards bearing the Intelcom name, notify your clients of the name change, and point them to your new company name and corresponding website.

DM_US:20988122_1

EXHIBIT E1

# HOWREY

Intelcom, Inc.
January 29, 2008
Page 2 of 2

    If we are unable to reach a resolution in the next few weeks, I will have no choice but to recommend that my client initiate legal action against you. I trust in light of our past conversation that this will not be necessary, but we need to bring this matter to a conclusion.

    I look forward to your response.

Very truly yours,

Bobby A. Ghajar

DM_US:20988122_1

EXHIBIT E2

**intelcom**

| | |
|---|---|
| **From:** | "Phillips, Rob" <PhillipsR@Howrey.com> |
| **To:** | "intelcom" <intelcom@ee.net> |
| **Cc:** | "Ghajar, Bobby" <GhajarB@howrey.com> |
| **Sent:** | Tuesday, March 18, 2008 9:27 AM |
| **Subject:** | RE: Intel Corporation |

Kassi:

Just want to make sure you received my email below, and are considering my explanation and requests. I look forward to hearing from you soon.

Thanks,

Rob

---

**From:** Phillips, Rob
**Sent:** Friday, March 14, 2008 3:24 PM
**To:** intelcom
**Cc:** Ghajar, Bobby
**Subject:** RE: Intel Corporation

Kassi:
Please allow me to explain further.

Intel has an ongoing trademark enforcement policy and procedure whereby it contacts businesses that are using the INTEL trademark, explains Intel's obligations and rights under trademark law, and attempts to reach an amicable agreement that involves the other business transitioning to a new name. In some circumstances, and even though it has no obligation to do so, Intel will agree to assist by contributing toward some of the hard costs associated with the name change. Given that this is a worldwide program, and there are hundreds of matters pending at any given time, the amount of money available for trademark settlements is very limited. Also, Intel limits its consideration to hard costs, as opposed to requests for compensation for loss of goodwill or other soft costs. Intel is willing to allow a reasonable transition time, continued use of URL's as pointers, and usage of the phrase "formerly known as" to help with the adoption of a new name.

It is our understanding that Intelcom is a reseller of telephone service in the United States. It is incorporated, has a website (intelcomusa.com), and a toll free telephone number. It does not have any retail outlets, and operates out of a leased office space in Columbus, Ohio. We assume it has brochures, letterhead and business cards, and would keep a reasonable amount of this collateral on hand and then routinely order new materials in the ordinary course of business. We are not aware of any other uses of the Intelcom name in connection with the business.

In our experience dealing with small service companies, a name change can be carried out without signficant expense. We believe the company would need to pay a few thousand dollars to register a new domain name, forward its existing URL to a new address, and revise its website to reflect the new name. It may also need several hundred dollars to print new stationary and business cards, however the transition period that we are contemplating should allow it the opportunity to exhaust its current supplies, and then order new supplies in the ordinary course of business. There would also be about a

EXHIBIT F1

6/24/2008

few hundred dollars in filing fees associated with changing its corporate name. It may also want to have an email announcement and perhaps a direct mailing to its past and present clients notifying them of its new name and web and email address. In total, we estimate the actual hard costs of a name change in to be around $4,000.

Hence, as I am sure you can appreciate, we cannot possibly justify to Intel that it make a $1.0 million settlement payment. And unless we have totally misunderstood the nature and extent of your business, which we are more than willing to consider, it would be difficult to justify a payment of more than a few thousand dollars. That is why we have asked for more details of what would be entailed with a name change, and would welcome the opportunity to discuss this with you further.

Please understand that you have not been singled out by Intel, and this is not because of any interest by our client to use the Intelcom name. The reason you have heard from us is that the law requires Intel to protect its trademark, or risk losing it. Obviously, the owner of a famous brand cannot take this responsibility lightly. Under the law of trademark infringement and dilution, Intel is entitled (and obligated) to stop any use of its trademark that is likely to cause confusion or dilute its distinctiveness. In lay terms, this means that any third party use of INTEL in the name of a business is a problem that needs to be addressed. Hence, Intel regularly "polices" the marketplace to keep any eye out for infringing and diluting uses, and that is how Intelcom came to its attention. This is just part of a larger ongoing enforcement effort by our client. Once we identify a use that is of concern, we contact the third party and seek to reach an amicable resolution that minimizes the impact on the other party's business.

As long as we continue to communicate, and make progress in our negotiations, we can avoid having to resort to the court system. That is our preference, for litigation is time consuming and costly for everyone involved. But if Intelcom continues to require a payment of $1.0 million in order to settle, and is unwilling to discuss the actual, reasonable hard costs of a name change, I run out of options for an amicable settlement, and am left with no choice but to recommend to Intel that it pursue its legal rights and remedies. I hope that we can avoid that, and chose instead to have a fruitful discussion and reach a fair resolution.

Thank you for your understanding. I hope to hear from you soon.

Rob

**Rob Phillips**

**HOWREY**

525 Market Street | Suite 3600 | San Francisco | CA | 94105-2708

Tel: (415) 848-4940 | Fax: (415) 848-4999

Email: phillipsr@howrey.com

EXHIBIT F-2          6/24/2008

**From:** intelcom [mailto:intelcom@ee.net]
**Sent:** Thursday, March 13, 2008 7:39 PM
**To:** Phillips, Rob
**Subject:** Re: Intel Corporation
**Importance:** High

They is nothing more to discuss then...

Thanks,
Kassi

> ----- Original Message -----
> **From:** Phillips, Rob
> **To:** intelcom
> **Sent:** Thursday, March 13, 2008 3:28 PM
> **Subject:** RE: Intel Corporation
>
> Kassi:
>
> Your offer is rejected.
>
> Until we receive specific justification and breakdown of the actual hard costs, we cannot make a counter-offer of any significance. What we are asking for appears to only require a relatively simple change to your existing website and trade name filings.
>
> I think it would be best that we speak in person, so I explain further how we can best get this resolved. Please call me.
>
> Rob
>
>
> **Rob Phillips**
>
> **HOWREY**
>
> 525 Market Street | Suite 3600 | San Francisco | CA | 94105-2708
>
> Tel: (415) 848-4940 | Fax: (415) 848-4999
>
> Email: phillipsr@howrey.com

EXHIBIT F3                                                        6/24/2008

**From:** intelcom [mailto:intelcom@ee.net]
**Sent:** Thursday, March 13, 2008 7:24 PM
**To:** Phillips, Rob
**Subject:** Re: Intel Corporation
**Importance:** High

Dear sir;

We are awaiting what kind of offer Intel Corporation is willing to make to close the deal. The board members agree
on one million USD.

Thanks,

Kassi

----- Original Message -----

**From:** Phillips, Rob
**To:** Intelcom@ee.net
**Cc:** Ghajar, Bobby
**Sent:** Thursday, March 13, 2008 11:22 AM
**Subject:** Intel Corporation

Mr. Tchankpa:

We received your voice mail message today. At what telepone number can we reach you?

We too are interested in closing this matter, but need to speak with you first. I am handling this matter while Mr. Ghajar is unavailable, so please call or email me.

Thank you,

Rob

Rob Phillips

HOWREY

525 Market Street | Suite 3600 | San Francisco | CA | 94105-2708

Tel: (415) 848-4940 | Fax: (415) 848-4999

Email: phillipsr@howrey.com

---

EXHIBIT F4

6/24/2008

This email and any attachments contain information from the law firm of Howrey LLP, which may be
The information is intended to be for the use of the individual or entity named on this email.
If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the
If you receive this email in error, please notify us by reply email immediately so that we can arrange

We take steps to remove metadata in attachments sent by email. Any remaining metadata should be
If you receive an attachment containing metadata, please notify the sender immediately and a replace

------------------------------------------------------------------------------

EXHIBIT F5                                6/24/2008

**THESE TWO PLANS INCLUDE:**

- ☑ **NO** Switching Charges
- ☑ **NO** Monthly Service Charges
- ☑ **NO** Minimum Usage
- ☑ **NO** Day/Time Restrictions on Calls
- ☑ **NO** (1010XXX)
- ☑ **NO** Surcharges & Connection Fees
- ☑ **NO** Contracts or Commitment
- ☑ **NO** Bill to Pay if **NO** Call(s) Made

• Both calling plans not available in all areas.

EXHIBIT C

# No Gimmicks!
# CALL TODAY
# 1-800-810-3133
# INTELCOM®

**Helping Urban and Rural America grow their Businesses and stay in touch with friends and family.**

① **Gold One**
Long Distance Calls
for Business & Residents

# 3¢
*Per Minute*

② **Toll Free Gold One**
Inbound calls for
Business & Residents

# 5.9¢
*Per Minute*



**FRIENDS OF OHIO** - After Six Years Of Customer Satisfaction - NOW - OFFERING THE BEST OF BOTH WORLDS

**3¢ Per Minute**
For All Your State-to-State and In-State Business & Residential Long Distance Telephone Calls.

OR

**$45/month**
Unlimited Residential In-State and State-to-State Long Distance Telephone Calls.

THESE TWO PLANS INCLUDE:
- ✓ **NO** Switching Charges
- ✓ **NO** Monthly Service Charges
- ✓ **NO** Minimum Usage
- ✓ **NO** Day/Time Restrictions on Calls
- ✓ **NO** Surcharges & Connection Fees
- ✓ **NO** Contracts or Commitment
- ✓ **NO** Bill to Pay if **NO** Call(s) Made

No Gimmicks! CALL TODAY 1-800-810-3133





INTELCOM®

EXHIBIT D

©Valpak®, 6/2004.

www.valpak.com There are more savings online for you.™

Advertise with Valpak of Northwestern Ohio, (419) 475-4100   329700.4/02